UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO.: 05-450 (EGS) |
| v. : | |
| ANNA M. ANDERSON, : | FILED |
| Defendant. : | JAN 1 2 2005<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and defendant Anna M. Anderson, with the concurrence of her attorney, Tony W. Miles, agree and stipulate as follows:

The defendant is charged by Information with one count of Wire Fraud, pursuant to 18 U.S.C. Section 1343.

In or about August of 2004, defendant was hired as the bookkeeper for Global USA, Inc. (hereinafter "Global"), in Washington, D.C., earning a salary of approximately $41,500. Defendant's duties included paying payroll, paying creditors, making deposits, performing on-line banking, and reconciling the company's bank account. Global was and is a private organization involved in the lobbying business.

On or about August 25, 2005, Global began an audit of its financial records because of some perceived financial difficulties. The audit revealed that between August 19, 2004, and August 23, 2005, sixty-eight (68) Automated Clearing House wire transfers involving a total of approximately $893,913.29 had been made from Global's SunTrust bank account in Washington, D.C., to defendant's Navy Federal Credit Union (hereinafter "NFCU") account in Vienna, Virginia. These transfers were not authorized by Global.

A review of defendant's NFCU account revealed sixty-eight (68) deposits from Global which were other than defendant's normal payroll deposits. The deposits totaled $893,913.29 and were deposited between August 19, 2004, and August 23, 2005.

Defendant, using her position at Global, caused these unauthorized wire transfers from Global's bank account into her account at the NFCU. In order to hide the illegal transfers, defendant submitted to Global's managing partner fraudulent financial statements approximately monthly showing a balance in Global's finances inflated over what was actually in its account. After Global became aware it was having financial difficulties and defendant was questioned by personnel at Global about those difficulties, defendant created fraudulent e-mail communications that provided alleged legitimate justifications for the transfers of funds from Global's account.

Moreover, sometime after defendant began transferring Global's money into her NFCU account, she opened an account at the NFCU for her fiancé (hereinafter "fiancé's account"). Almost all of the funds put into this account were from defendant's NFCU account. Between August of 2004 and August of 2005, defendant made ninety-nine transfers of funds into her fiancé's account, totaling $163,980. Defendant's fiancé has been unemployed from on or about January 15, 2005.

On or about September 1, 2005, in a recorded interview with a private investigator employed by Global, defendant acknowledged wrongfully taking between $500,000 and $600,000 from Global. Defendant estimated that she had spent the money over approximately a one year time frame in the following manner on goods and services for her own, private use: $40,000 on travel; $20,000 on clothes; $10,000 on purses, $10,000 on a Christmas Party; $30,000 on decorations; $20,000 on down payments on cars; $5,000 on a sprinkler system;

$6,000 on a gutter system; $9,000 on landscaping; $10,000 on a deck; $15,000 on general bills; $50,000 on past due bills and collections; $80,000 on jewelry; $18,000 on divorce proceedings; $22,000 on daycare; $130,000 on an upcoming wedding; $30,000 on an engagement party; $6,000 on a play set; $30,000 on furniture; and $8,000 on an intercom system. Defendant acknowledged that any money deposited into her bank account above her normal salary of approximately $40,000 would be money she had taken from Global.

A review of records in this matter show the following purchases, among others, by defendant and her fiancé using the funds illegally transferred from Global's account: (1) the purchase by defendant, on or about June 29, 2005, of a 2002 Mercedes Benz S430, for $40,466.61; (2) the purchase by defendant and her fiancé on or about May 7, 2005, of a Suzuki Hayabusa motorcycle and accessories for approximately $25,000; (3) the purchase on or about September 17, 2004, by defendant's fiancé of a 1995 BMW 740. with approximately $14,800 being paid on the vehicle; and (4) the purchase on or about February 11, 2005, by defendant of a 2.01 carat diamond engagement ring set in platinum, with an appraised value of $33,296.55.

Defendant also acknowledged to the private investigator that she had deposited three personal checks from her NFCU account into Global's bank account to cover payroll. Defendant stated the purpose was "to put more money into the account so that checks wouldn't bounce." A review of defendant'S NFCU account showed that three checks were deposited into the Global's SunTrust account. The three checks are described as the following: (1) dated 07/05/05, made payable for $60,000: (2) dated 07/11/05, made payable for $60,000, and (3) dated 07/28/05, made payable for $90,500. These three checks were rejected, however, due to insufficient funds.

In the interview with the private investigator, defendant stated that she would work with Global to pay back the money. Despite these assertions, defendant and her fiancé continued to spend money transferred from Global's account on her and her finance's own personal expenses, including her then-upcoming wedding to her fiancé.

Defendant has a previous felony conviction on October 30, 2003, for embezzlement in Prince William County, Virginia. As a result, defendant was given a sentence of six years probation and was serving that probationary sentence at the time of this offense.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA
D.C. Bar No. 451058

By: *Daniel P. Butler*
DANIEL P. BUTLER
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 353-9431
Daniel.Butler@usdoj.gov

**DEFENDANT'S ACCEPTANCE**

I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney, Tony W. Miles, I agree and stipulate to this Statement of Offense.

Date: January 12, 2006

Anna M. Anderson
Defendant

      I have discussed this Statement of Offense with my client, Anna M. Anderson. I concur with her decision to stipulate to this Statement of Offense.

Date: 1|12|06

_Tony W. Miles_
Tony W. Miles, Esquire
Attorney for Defendant Anna M. Anderson