## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.  05-450 (EGS)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANNA M. ANDERSON,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its counsel, the United States Attorney for the

District of Columbia, hereby submits this memorandum in aid of the sentencing of defendant Anna

M. Anderson.

### I.  FACTUAL BACKGROUND

Defendant was arrested in this matter on October 13, 2005, pursuant to an arrest warrant.

From the time of defendant's initial appearance before the Magistrate Judge on October 14, 2005,

defense counsel informed the government attorney that a guilty plea was likely.  Defendant waived

for thirty days the holding of the preliminary hearing on October 31 and December 2, 2005.

On December 20, 2005, the government filed an Information charging defendant with wire

fraud pursuant to 18 U.S.C. § 1343.  Defendant pled guilty to the Information on January 12, 2006.

Sentencing is now set before the Court on August 1, 2006 at 11:00 a.m.

According to the statement of offense filed in this matter and the Presentence Investigation

Report ("PSR"), at pages 4-5, ¶¶ 8-16, both of which were agreed to by the defendant, PSR, at page

6, ¶ 20, in or about August of 2004, defendant was hired as the bookkeeper for Global USA, Inc.

(hereinafter "Global"), in Washington, D.C., earning a salary of approximately $41,500. Defendant's

duties included paying payroll, paying creditors, making deposits, performing on-line banking, and

reconciling the company's bank account.  Global was and is a private organization involved in the lobbying business.

On or about August 25, 2005, Global began an audit of its financial records because of some perceived financial difficulties.  The audit revealed that between August 19, 2004, and August 23, 2005, sixty-eight (68) Automated Clearing House wire transfers involving a total of approximately $893,913.29 had been made from Global's SunTrust bank account in Washington, D.C., to defendant's Navy Federal Credit Union (hereinafter "NFCU") account in Vienna, Virginia.  These transfers were not authorized by Global.

A review of defendant's NFCU account revealed sixty-eight (68) deposits from Global which were other than defendant's normal payroll deposits.  The deposits totaled $893,913.29 and were deposited between August 19, 2004, and August 23, 2005.

Defendant, using her position at Global, caused these unauthorized wire transfers from Global's bank account into her account at the NFCU.  In order to hide the illegal transfers, defendant submitted to Global's managing partner fraudulent financial statements approximately monthly showing a balance in Global's finances inflated over what was actually in its account. After Global became aware it was having financial difficulties and defendant was questioned by personnel at Global about those difficulties, defendant created fraudulent e-mail communications that provided alleged legitimate justifications for the transfers of funds from Global's account.

Moreover, sometime after defendant began transferring Global's money into her NFCU account, she opened an account at the NFCU for her fiancé (hereinafter "fiancé's account").  Almost all of the funds put into this account were from defendant's NFCU account.  Between August of 2004 and August of 2005, defendant made ninety-nine transfers of funds into her fiancé's account,

totaling $163,980.  Defendant's fiancé has been unemployed from on or about January 15, 2005.

On or about September 1, 2005, in a recorded interview with a private investigator employed by Global, defendant acknowledged wrongfully taking between $500,000 and $600,000 from Global. Defendant estimated that she had spent the money over approximately a one year time frame in the following manner on goods and services for her own, private use:  $40,000 on travel; $20,000 on clothes; $10,000 on purses, $10,000 on a Christmas Party; $30,000 on decorations; $20,000 on down payments on cars; $5,000 on a sprinkler system; $6,000 on a gutter system; $9,000 on landscaping; $10,000 on a deck; $15,000 on general bills; $50,000 on past due bills and collections; $80,000 on jewelry; $18,000 on divorce proceedings; $22,000 on daycare; $130,000 on an upcoming wedding; $30,000 on an engagement party; $6,000 on a play set; $30,000 on furniture; and $8,000 on an intercom system.  Defendant acknowledged that any money deposited into her bank account above her normal salary of approximately $40,000 would be money she had taken from Global.

A review of records in this matter show the following purchases, among others, by defendant and her fiancé using the funds illegally transferred from Global's account:  (1) the purchase by defendant, on or about June 29, 2005, of a 2002 Mercedes Benz S430, for $40,466.61; (2) the purchase by defendant and her fiancé on or about May 7, 2005, of a Suzuki Hayabusa motorcycle and accessories for approximately $25,000; (3) the purchase on or about September 17, 2004, by defendant's fiancé of a 1995 BMW 740. with approximately $14,800 being paid on the vehicle; and (4) the purchase on or about February 11, 2005, by defendant of a 2.01 carat diamond engagement ring set in platinum, with an appraised value of $33,296.55.

Defendant also acknowledged to the private investigator that she had deposited three personal checks from her NFCU account into Global's bank account to cover payroll.  Defendant stated the

3

purpose was "to put more money into the account so that checks wouldn't bounce." A review of defendant'S NFCU account showed that three checks were deposited into the Global's SunTrust account. The three checks are described as the following: (1) dated 07/05/05, made payable for $60,000: (2) dated 07/11/05, made payable for $60,000, and (3) dated 07/28/05, made payable for $90,500. These three checks were rejected, however, due to insufficient funds.

In the interview with the private investigator, defendant stated that she would work with Global to pay back the money. Despite these assertions, defendant and her fiancé continued to spend money transferred from Global's account on her and her finance's own personal expenses, including her then-upcoming wedding to her fiancé.

## II. DEFENDANT'S CRIMINAL RECORD

Defendant has a previous felony conviction on October 30, 2003, for embezzlement in Prince William County, Virginia. PSR, at page 5, ¶ 16, and page 7, ¶ 33. As a result, defendant was given a sentence of six years probation and was serving that probationary sentence at the time of this offense. *Id.* That offense, as with the one before this Court, involved defendant embezzling money from a business at which she worked. *Id.,* at page 7*, ¶ 33. As a result, defendant has a criminal history category of II. *Id.*, at page 8, ¶ 37.

## III. UNITED STATES SENTENCING GUIDELINES

The Probation Officer believes, and the United States concurs, that the defendant's total offense level is 18, her criminal history is II, and her guidelines range is 30 to 37 months of imprisonment. PSR, at page 12, ¶ 62; *see id.*, at pages 6-7, ¶¶ 23-30 (Offense Level Computation). According to the PSR, the defendant presently falls within Zone D of the Sentencing Table. Id., at page 13, ¶ 68. A Guidelines sentence in Zone D requires a sentence of imprisonment. *See id.*

## IV.  DEFENDANT'S LEVEL OF COOPERATION/
## U.S. ATTORNEY'S OFFICE DEPARTURE COMMITTEE

In the plea letter in this case, there is standard language to the effect that defendant agreed to cooperate with the government.  Plea Letter, December 12, 2005, page 3, ¶ 5.  The government, in return, agreed to advise the Court "of the full nature, extent, and value of the cooperation provided by [defendant] to the government."  Id. at page 4, ¶ 8.

In order to determine what potential cooperation defendant might be able to provide to the government, representatives of the government met with defendant on two occasions.  Defendant provided to the government information about others who might have been involved in the same or related conduct to that which defendant committed.  The government has followed up on the information defendant provided in an attempt to substantiate what she said and determine whether it would support the prosecution of other persons.  It is clear to the undersigned attorney for the government from those efforts that there are no productive areas in which the defendant could provide cooperation to the government in such prosecutions.  Accordingly, other than discussions with defendant about what information she has, the government has not requested anything further from defendant.

Also pursuant to the plea letter, the government agreed to inform the Departure Committee of the United States Attorney's Office for the District of Columbia ("Departure Committee") of the full nature, extent, and value of the cooperation provided by the defendant.  Id.  The undersigned attorney has complied with this obligation.  The Departure Committee found that the defendant did not provide substantial assistance in the investigation or prosecution of another person or entity and did not recommend a downward departure.  Accordingly, the government is not moving for a

5

departure downward in the offense level of the defendant under the Sentencing Guidelines.

## V. RECOMMENDATION

Defendant pled guilty to embezzling almost $900,000 from Global, the company at which she worked. Her conduct caused deep and long-lasting financial difficulties at Global. Moreover, defendant committed this offense while on probation for embezzling money from another company for which she had worked in Virginia. Beyond the financial harm caused by defendant, she also damaged the intangible feeling of goodwill and trust of her co-workers at Global which is harder to measure. Finally, she violated the second chance given to her by the Court in Virginia when it placed her on probation following her conviction there. Accordingly, defendant should now be held responsible for her conduct.

On the other hand, and to her credit, defendant quickly admitted her guilt in this matter and pled guilty pre-indictment.

In this case, the government accordingly is requesting that the Court sentence defendant within the sentencing range under the Guidelines, as set forth above, in the PSR, and in the plea agreement, that is, 30-37 months . As to the appropriate sentence within that range, the government defers to the Court. The government also request that defendant be ordered to pay restitution in the amount of $893,913.29, as she has agreed to do in the plea letter. Plea Letter, at pages 2-3, ¶ 4.[1] It does not appear, however, that defendant has the additional ability to pay a fine. PSR, at page 12, ¶ 60. Finally, the government requests that the Court place defendant on three supervised release

---

[1] By the time of sentencing, the government will attempt to determine how much money was recovered from the forfeiture of the two cars, motorcycle and diamond ring and, accordingly, how much should be subtracted from the total amount of restitution of $893,913.29. *See* Plea Letter, at page 3, paragraph 4.

following her release from incarceration.  PSR, at page 13, ¶ 65.

## VI.  <u>CONCLUSION</u>

WHEREFORE, the government respectfully requests that the Court impose a sentence within the applicable Guidelines sentencing range, order restitution and impose a period of supervised release of three years following defendant's incarceration.

Respectfully submitted,

KENNETH C. WAINSTEIN
UNITED STATES ATTORNEY
D.C. BAR # 451058


/ s /

By:     _____
DANIEL P. BUTLER
D.C. Bar #417718
ASSISTANT U.S. ATTORNEY
555 4th Street, N.W.
Washington, D.C. 20530
(202) 353-9431
Daniel.Butler@usdoj.gov